# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**IBRAHIM BARAKAT,**

    **Plaintiff,**      CIVIL ACTION NO. 16-cv-10718

    v.      DISTRICT JUDGE ARTHUR J. TARNOW

**EQUIFAX INFORMATION**      MAGISTRATE JUDGE MONA K. MAJZOUB
**SERVICES, LLC, CAPITAL ONE**
**BANK USA, N.A., and EXPERIAN**
**INFORMATION SOLUTIONS, INC.,**

    **Defendants.**

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' JOINT MOTION TO EXCLUDE PLAINTIFF'S EXPERT [52]

This matter comes before the Court on Defendants Equifax Information Services, LLC, Capital One Bank USA, N.A., and Experian Information Solutions, Inc.'s Joint Motion to Exclude Plaintiff's Expert. (Docket no. 52.) Plaintiff Ibrahim Barakat responded to Defendants' Motion (docket no. 64), and Defendants replied to Plaintiff's Response (docket no. 66). The Motion has been referred to the undersigned for consideration. (Docket no. 54.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

## I. BACKGROUND

Plaintiff initiated this action on January 22, 2016, in the 35th District Court in Plymouth, Michigan, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 (FCRA). (Docket no. 1-1.) The action was removed to this court on February 29, 2016. (Docket no. 1.)

In the Amended Complaint, Plaintiff alleges that Defendant Capital One reported his delinquent credit card account to the Credit Reporting Agencies (CRAs), Equifax, Experian, and TransUnion, as charged off from February 2012 through July 2015. (Docket no. 7 ¶ 6; *see also* docket no. 52-1 at 7.) According to Plaintiff, "[t]hese multiple charge offs are inaccurate [and misleading] in that they inaccurately reflect the account as having been charged off multiple times." (Docket no. 7 ¶¶ 6, 12.) Plaintiff asserts that he noticed the multiple charge offs in his credit file on or about November 20, 2015, and he filed a dispute with the CRAs shortly thereafter. (*Id*. ¶ 7-8.) It is Plaintiff's belief that the CRAs then forwarded his dispute to Capital One. (*Id*. ¶ 9.) Despite this dispute, Plaintiff asserts, his January and February 2016 credit reports continued to reflect the multiple charge offs. (*Id*. ¶¶ 10-11.)

Plaintiff claims that after being informed of Plaintiff's consumer dispute, Defendant Capital One negligently and willfully failed to conduct a proper investigation of the dispute, in violation of the FCRA, 15 U.S.C. § 1681s-2(b). (Docket no. 7 ¶¶ 14, 21.) Plaintiff expounds that in conducting its investigation, Defendant Capital One negligently and willfully failed to review all of the relevant information available to it, including that provided by the CRAs, and it failed to direct the CRAs to remove the multiple charge offs. (*Id*. ¶¶ 15, 22.) With regard to Defendants Equifax and Experian (the CRA Defendants), Plaintiff asserts that the consumer reports that they prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced contained information about Plaintiff that was false, misleading and inaccurate. (*Id*. ¶¶ 26-27, 33-34, 40-41, 47-48.) He claims that the CRA Defendants negligently and willfully failed to (1) maintain and/or follow reasonable procedures to ensure the maximum possible accuracy of those reports, in violation of section 1681e(b) of the FCRA; and (2) failed to conduct

a reasonable reinvestigation into Plaintiff's consumer dispute as required by section 1681i of the FCRA. (*Id.* ¶¶ 28-29, 35-36, 42-43, 49-50.)

Plaintiff has retained Mr. Dean Binder as an expert to support his claims in this matter. Mr. Binder has prepared and submitted a report in which he renders two principal opinions: (1) "Defendant Capital One has violated the FRCA [sic] by Failing to Conduct a Proper Investigation;" and (2) "Defendant[s] Equifax, Experian and Experian [sic][1] have Violated the FRCA [sic] by not Following Reasonable Procedures to Assure Maximum Possible Accuracy of the Information Contained in Plaintiff's Credit Reports." (Docket no. 52-2.) In the supporting discussion of these opinions, Mr. Binder further opines that:

- Defendants' reporting of the charge-off notation (Code L) in the payment history category of Plaintiff's credit report for a span of 40 months "is inaccurate or materially misleading as it can be perceived by consumers, lenders, employers, insurance companies, underwriters, landlords, and even scoring companies as either having occurred over 40 separate times or even more importantly having occurred more recently than it actually occurred." (Docket no. 52-2 at 11, 14.)

- "Plaintiff's account could easily have been inferred as having just transpired throughout the February 2012 – June/July 2015 reporting span. Even today it could be interpreted as having been charged off just over a year ago instead of over 4 years ago." (*Id.* at 12, 15.)

- With regard to Defendant Capital One,

    o "Had Capital One performed an investigation with respect to the multiple charge off entries, their results would have found over 40 charge off notations as incomplete or inaccurate." (*Id.* at 12.)
    o "Upon completion of a reasonable investigation, Chase [sic] should have modified Plaintiffs' [sic] account through their internal database and requested that the Credit Reporting Agencies modify their database files to show a single charge off event as Code L in February 2012. Reporting the L Code is unnecessary as Defendant could have easily changed the balance or status of the account after February 2012 without continually inserting the L Code to the payment history, which can easily be misinterpreted by anyone viewing Plaintiffs [sic] credit report." (*Id.*)

---

[1] Mr. Binder's second reference to Experian in this opinion is presumably a typographical error, which should be replaced by TransUnion, a named defendant in this matter until its stipulated dismissal on October 4, 2016. (*See* docket no. 49.)

3

- o "With respect to the multiple charge off[s], Chase [sic] has determined to follow procedures which did not thoroughly investigate, review, or verify whether they could report Plaintiff's charged off account as accurate without inserting the materially misleading charge off notations in the payment history category." (*Id.*)

- "With respect to the multiple charge offs, [the CRAs] have failed to maintain and or follow reasonable procedures to assure maximum possible accuracy. Specifically, they failed to maintain procedures which allow for the reporting of multiple charge offs as their presence in [sic] unquestionably misleading and or confusing." (*Id.* at 15-16.)

- "[D]uring my time as a Credit Consultant/Expert, the multiple charge off issue has been brought to my attention on several occasions. It seems highly unlikely that the Credit Reporting Agencies have not been notified previously about the misleading nature of the multiple charge offs which could surely prompt a procedure change." (*Id.* at 16.)

Defendants jointly move to exclude the opinions and testimony of Mr. Binder. (Docket no. 52.)

## II.     GOVERNING LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a qualified expert witness may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597 (1993), the Supreme Court held that Rule 702 charges the district court with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." It also "listed several factors which the lower courts should consider in determining the reliability of scientific evidence, including: whether the theory can be reliably tested; whether it has been subject to peer review; what the theory or

test's potential rate of error of is; whether there are standards controlling the test's operations; whether the theory or test is generally accepted; and whether the expert conducted the work independent of litigation." *Thomas v. City of Chattanooga*, 398 F.3d 426, 431 n.1 (6th Cir. 2005) (citing *Daubert*, 509 U.S. at 590-97). Rule 702, as amended in 2000, reflects the Supreme Court's decisions in *Daubert* and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008) (quoting Fed. R. Evid. 702 advisory committee's notes, 2000 amend.) ("In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.")).

In parsing the language of Rule 702, the Sixth Circuit determined that a proposed expert's opinion is admissible, at the discretion of the trial court, if: (1) the witness is qualified by "knowledge, skill, experience, training, or education;" (2) the testimony is relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue;" and (3) the testimony is reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528-29 (quoting Fed. R. Evid. 702). The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of proof. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert,* 509 U.S. at 592 n.10). "Nevertheless, Rule 702's requirements are applied liberally, leaving '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [as] the traditional and appropriate means of attacking shaky but admissible evidence.'" *Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 WL 4239181, at *2 (W.D. Mich. Jan. 29, 2016) (quoting *Daubert*, 509 U.S. at 596). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap*

*Metal Antitrust Litig.*, 527 F.3d at 530 (quoting Fed. R. Evid. 702 advisory committee's notes, 2000 amend.).

## III. ANALYSIS

Defendants assert that Mr. Binder's opinions and testimony should be excluded because (1) "Mr. Binder lacks the requisite qualifications through knowledge, skill, experience, training, or education to testify competently regarding the matters contained in his two Opinions;" (2) "Mr. Binder's Opinions and proposed testimony will not help the trier of fact to understand the evidence or to determine a fact in issue;" (3) "Mr. Binder's Opinions and proposed testimony are speculative, based on insufficient facts, and unreliable;" and (4) "Mr. Binder's Opinions and proposed testimony will confuse the issues and mislead the jury because their prejudice will outweigh their claimed probative value." (Docket no. 52-1 at 8, 13-23.)

In response to Defendants' Motion, Plaintiff relies heavily on non-binding case law, *Century Indem. Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670 (W.D. Mich. 2003), in arguing that the factors set forth in *Daubert* to determine the reliability of an expert's scientific testimony, *supra*, are inapplicable to Mr. Binder's expert testimony in this matter because it is based on Mr. Binder's specialized, not scientific, knowledge. (Docket no. 64 at 5-6, 8-11.) Plaintiff then asserts, in conclusory fashion, that Mr. Binder's "credentials and experience provide the qualifications for him to testify as an expert witness in this case," and that Mr. Binder's "opinions and testimony would help the jury understand the reporting of multiple charge off notations and their effect on users of consumer reports." (*Id*. at 11.)

Indeed, while the Supreme Court has held that the principles articulated in *Daubert* apply to "all expert testimony," it has also held that "the lower courts have flexibility in the application of the factors, because it may not make sense to apply some of the *Daubert* factors, such as the

rate of error analysis, to non-scientific testimony." *Thomas, supra,* 398 F.3d at 431–32 (citing *Kumho,* 526 U.S. at 147). Nevertheless, Plaintiff's reliance on *Century Indem. Co.* and his conclusory arguments do not assist him in meeting his burden of establishing the admissibility of Mr. Binder's opinions and testimony. As further discussed below, even if the Court does not apply the *Daubert* factors in evaluating the reliability of Mr. Binder's opinions and testimony that are purportedly based on his specialized knowledge and experience, Mr. Binder's opinions and testimony should, and will be, excluded by this Court.

As an initial matter, as Defendants point out, Mr. Binder's opinions are stated in the form of legal opinions on the ultimate issues in this matter: (1) "Defendant Capital One has violated the FRCA [sic] by Failing to Conduct a Proper Investigation;" and (2) "Defendant[s] Equifax, Experian and Experian [sic] have Violated the FRCA [sic] by not Following Reasonable Procedures to Assure Maximum Possible Accuracy of the Information Contained in Plaintiff's Credit Reports." Defendants argue that because Mr. Binder does not have a law degree or legal training, he is not qualified to testify competently that Defendants violated the FCRA. (Docket no. 52-1 at 13 (citing docket no. 52-3 at 12).) The Court agrees with Defendants. Additionally, the Sixth Circuit has held that while "[a]n opinion is not objectionable just because it embraces an ultimate issue[,] . . . a[n expert] witness may not testify to a legal conclusion." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014) (citing Fed. R. Evid. 704(a), *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir. 1994)). "[T]estimony offering nothing more than a legal conclusion—i.e[.], testimony that does little more than tell the jury what result to reach— is properly excludable under the Rules," as it "hardly can be viewed as being helpful to the jury." *Woods v. Lecureux*, 110 F.3d 1215, 1220-21 (6th Cir. 1997). "[E]xperts may only 'state[ ] opinions that suggest the answer to the ultimate issue or that give the jury all the information

7

from which it can draw inferences as to the ultimate issue.'" *Summerland v. Cty. of Livingston*, 240 F. App'x 70, 81 (6th Cir. 2007) (quoting *Berry*, 25 F.3d at 1353). The Court will therefore grant Defendants' Motion in this regard and exclude Mr. Binder's legal opinions and testimony on the ultimate issue of whether Defendants violated the FCRA.

Defendants also challenge Mr. Binder's qualifications to express the factual opinions that he made in the supporting discussion of his legal opinions; they also challenge the relevancy and reliability of those factual opinions. (Docket no. 52-1 at 13-22.) "To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (quoting Fed. R. Evid. 702). "Although this requirement is typically treated liberally, a witness is not an expert simply because he claims to be." *Rose v. Truck Centers, Inc.*, 388 F. App'x 528, 533 (6th Cir. 2010) (citing *Pride,* 218 F.3d at 577). "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry*, 25 F.3d at 1351. Likewise, "[t]he task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529–30. If the witness is relying solely or primarily on experience, to establish a sufficient foundation for expert testimony, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's notes, 2000 amend.; *Thomas*, 398 F.3d at 432. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id*.

Having reviewed Mr. Binder's report and deposition testimony, it is apparent that Mr. Binder's non-legal opinions lack a reliable foundation. In his report, Mr. Binder informs that he worked in the credit industry for over thirteen years and that he has been a "Credit Expert Witness" for an additional seven years. (Docket no. 52-2 at 2.) He worked for Defendant Equifax for approximately six years in various roles, such as managing consumer contacts, working with fraud victims, and sales. (*Id.*) He worked at Morgan as a Finance and Insurance Manager for about a year, where he was responsible for working with lenders to secure financing for purchasers of large-ticket recreational vehicles. (*Id.* at 3.) And he worked for the Fair Isaac Corporation for approximately seven years, during which he was responsible for the sale of loan origination products. (*Id.*) Mr. Binder informs that while working for Morgan and the Fair Isaac Corporation, he routinely analyzed, experienced, and communicated the effect of credit events on an individual's FICO credit score. (*Id.*) Mr. Binder asserts that because of his experience working for Defendant Equifax and the Fair Isaac Corporation, he is "well-versed on credit scoring, credit reporting, credit fraud, identity theft, scoring analysis and the use of credit scoring and credit models in the financial services industry. (*Id.* at 4.)

Mr. Binder indicates, however, that he only recently learned of the multiple charge-off notation issue within the year prior to his deposition through his role as a "Credit Consultant/Expert." (Docket no. 52-2 at 16; docket no. 52-3 at 201.) Admittedly then, Mr. Binder did not encounter or handle the multiple charge-off issue during his tenures with Equifax, Morgan, or Fair Isaac, and he therefore has no real-world experience regarding how charged-off accounts should be reported or addressed when a dispute arises. Additionally, while Mr. Binder agrees that the Metro 2 Guide provides the industry standards for credit reporting, and that it is the format that the CRAs and data furnishers like Capital One follow to report items like

9

charged-off accounts, he testified that Metro 2 had not yet been implemented when he worked for Equifax, and he has not studied the Metro 2 guidelines in his role as a credit expert. (Docket no. 52-3 at 25-27.) Critically, neither Mr. Binder nor Plaintiff's counsel explain how Mr. Binder's consumer and sales experience in the credit industry leads to the conclusions reached in his opinions – that the reporting of Plaintiff's charged-off account was materially misleading and inaccurate and that Defendants failed to properly investigate Plaintiff's dispute or follow proper reporting procedures; they fail to explain why Mr. Binder's experience is a sufficient basis for the opinions; and they do not describe how Mr. Binder's qualifications or experience are reliably applied to the facts of the instant case. *See* Fed. R. Evid. 702 advisory committee's notes, 2000 amend.; *Thomas*, 398 F.3d at 432.

In fact, Mr. Binder testified that his opinion that the charge-off notation reported by Defendants in the payment history category of Plaintiff's credit report for a span of 40 months "is inaccurate or materially misleading" is based on speculation:

> Q: But you don't know of any groups that have been misled? You're just speculating that the report might be misleading; is that right?
>
> A: Yes. That's what I believe.
>
> Q: What is that opinion based upon?
>
> A: Well, my time as a lender and the confusing nature that even I'm struggling with in looking at these charge offs. I would, again, use the word speculate; that there are many different opinions regarding multiple sources as to what these multiple charge offs mean and how recently they occurred and how many of them there were.

(Docket no. 52-3 at 134-35; *see also id.* at 90-91.) "Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (quoting *United States v. L.E. Cooke Co.,* 991 F.2d 336, 342 (6th Cir. 1993)). As the Sixth Circuit has explained, "[t]he '*ipse dixit* of the expert' alone is not sufficient

to permit the admission of an opinion." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

With regard to Mr. Binder's opinion that Defendant Capital One failed to conduct a proper investigation into Plaintiff's consumer dispute, Mr. Binder admits that he does not have and did not ask for any information regarding Capital One's investigation – he doesn't know what Capital One did to investigate the dispute or what procedures it used or followed in conducting the investigation – nor does he know how a credit grantor would generally perform its investigation. (Docket no. 52-3 at 148-49.) Mr. Binder informs that his opinion regarding Capital One's purported failure to conduct a proper investigation is based on the outcome of the investigation itself. *Id.* at 149. In his report, Mr. Binder seemingly opines that the outcome of the investigation is incorrect because Defendant Capital One conducted an improper investigation, and had Capital One conducted a proper investigation, the result of that investigation would have revealed that the multiple charge-off notations were inaccurately reported. (*See* docket no. 52-2 at 12.) At his deposition, however, Mr. Binder admitted that Defendant Capital One's reporting of the charge-off notations were factually and technically accurate. (Docket no. 52-3 at 137-38, 154.) Mr. Binder's opinion with regard to Capital One's investigation is therefore baseless, circular, internally inconsistent, and unreliable.

Furthermore, as Defendants point out, where Defendant Capital One's reporting is technically accurate, as Mr. Binder admits, Mr. Binder's opinion that Capital One's reporting could be misleading is legally irrelevant, as [t]he Sixth Circuit has held that a reporting is accurate for the purposes of the FCRA so long as it is technically accurate, or accurate on its face, even if it might be misleading or incomplete in some respect." (Docket no. 52-1 at 15-16 (citing *Elsady v. Rapid Glob. Bus. Sols., Inc.*, No. 09-11659, 2010 WL 2740154, at *6 (E.D.

11

Mich. July 12, 2010) (citing *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 318 (6th Cir. 2001))).)

Mr. Binder's opinion that the CRA Defendants have failed to maintain and or follow reasonable reporting procedures to assure maximum possible accuracy is baseless for similar reasons. First, Mr. Binder does not purport to know which policies and procedures the CRAs follow with regard to the reporting or dispute resolution of charged-off accounts. Moreover, he has not had any experience in developing or writing policies and procedures regarding the manner in which charged-off accounts should be reported on credit reports, or concerning credit reporting generally. (Docket no. 52-3 at 104-05.) Furthermore, as previously mentioned, Mr. Binder has never studied the Metro 2 credit reporting standards, but he agrees that if the CRA Defendants followed the Metro 2 reporting guidelines, they would be operating within industry standards. (*Id*. at 27, 28.) Notably, in his deposition, Mr. Binder was unwilling or unable to opine that the CRA Defendants' reporting of Plaintiff's charged-off account was against the Metro 2 guidelines or otherwise inaccurate. (*Id*. at 110.) Rather, Mr. Binder's deposition testimony sheds light on what is presumably the crux of his opinion in this regard: that the reporting procedures should be changed because they allow for the reporting of multiple charge-off notations, which could be misleading to or misinterpreted by creditors and other entities. (*See id*. at 102, 104; *see also* docket no. 52-2 at 16.) As discussed above, however, Mr. Binder admits that the misleading nature of the reported multiple charge-off notations is based on his mere speculation; he does not explain how his asserted qualifications lead him to this conclusion. Mr. Binder's opinions in this regard are therefore not based on his specialized knowledge or experience, or on sufficient facts or data as is required by Rule 702.

For the reasons stated above, Plaintiff has failed to establish that Mr. Binder is qualified to render his stated opinions or that the opinions are relevant and reliable such that they "will assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. The Court will therefore exclude the opinions and testimony of Mr. Binder in this matter.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion to Exclude Plaintiff's Expert [52] is **GRANTED**.

### NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: August 2, 2017         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: August 2, 2017         s/ Lisa C. Bartlett
                              Case Manager